1

2

3

4

5

6

7

8

## UNITED STATES DISTRICT COURT

9

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

10

11  DARWIN ANTONIO AREVALO
        MILLAN, on his own and on behalf
12      of others similarly situated,

13                    Petitioner-Plaintiff,

14          v.

15  DONALD J. TRUMP, in his official
        capacity as President of the United
16      States;
     PAMELA BONDI, Attorney General of
17      the United States, in her official
        capacity;
18  KRISTI NOEM, Secretary of the U.S.
        Department of Homeland Security,
19      in her official capacity;
     U.S. DEPARTMENT OF
20      HOMELAND SECURITY;
     PETE HEGSETH, Secretary of the
21      U.S. Department of Defense, in his
        official capacity;
22  U.S. DEPARTMENT OF DEFENSE;
     MARCO RUBIO, Secretary of State, in
23      his official capacity;
     U.S. DEPARTMENT OF STATE;
24  TODD LYONS, Acting Director of
        U.S. Immigration and Customs
25      Enforcement, in his official capacity;
     U.S. IMMIGRATION AND
26      CUSTOMS ENFORCEMENT;
     DAVID MARIN, in his official capacity
27      as Director of the Los Angeles Field
        Office Director for U.S. Immigration
28      and Customs Enforcement;

Case No. 5:25-cv-01207-JWH-PDx

**ORDER REGARDING PETITIONER-PLAINTIFF'S *EX PARTE* APPLICATION FOR A TEMPORARY RESTRAINING ORDER [ECF No. 2] AND MOTION FOR CLASS CERTIFICATION [ECF No. 3]**

1    FERETI SEMAIA, in his official
     capacity as Warden of the GEO
2    Group Adelanto ICE Processing
     Center and Desert View Annex; and
3    DOES 1-10,

4              Respondents-Defendants.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# I. SUMMARY OF DECISION

Petitioner-Plaintiff Darwin Antonio Arevalo Millan ("Arevalo") is a Venezuelan citizen who is currently detained at the Desert View Annex or Desert View Modified Community Correctional Facility, which is associated with the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center.[1]  Arevalo is potentially subject to a March 2025 executive order, Proclamation No. 10903, which is entitled "Protecting the American People Against Invasion."[2]  Proclamation No. 10903 authorizes and directs the immediate removal of certain Venezuelan citizens.[3]  *See* 90 Fed. Reg. 13033.

Presently before the Court are two matters for decision:  (1) Arevalo's *ex parte* application for a Temporary Restraining Order against Respondents-Defendants Donald J. Trump, Pamela Bondi, Kristi Noem, U.S. Department of Homeland Security, Pete Hegseth, U.S. Department of Defense, Marco Rubio, U.S. Department of State, Todd Lyons, U.S. Immigration and Customs Enforcement, David Marin, and Fereti Semaia (collectively, the "Government");[4] and (2) Arevalo's motion for class certification, which the Court construes as an *ex parte* application to certify a class for the purpose of immediate injunctive relief.[5]

For the reasons explained below, the Court **GRANTS in part** Arevalo's Applications.  The Government is hereby temporarily **ENJOINED** and

---

[1]      *See generally* Petition for Writ of Habeas Corpus and Class Action Compl. for Decl. and Inj. Relief (the "Petition") [ECF No. 1].

[2]      *See id.* at ¶ 1.

[3]      *See id.* at ¶ 163.

[4]      *See* Pet.-Pl.'s Emergency Appl. for a Temporary Restraining Order (the "TRO Application") [ECF No. 2].

[5]      *See* Pet.-Pl.'s Mot. for Class Certification (the "Class Certification Application") [ECF No. 3].

1 **RESTRAINED** from removing Arevalo or any member of the putative class

2 pursuant to Proclamation No. 10903 pending further Order of this Court

3 regarding the amount of notice that is due prior to removal.

## II.  BACKGROUND

5 **A.    Proclamation No. 10903**

6 On March 14, 2025, President Trump issued an executive order,

7 Proclamation No. 10903, through which he invoked the Alien Enemies Act, 50

8 U.S.C. §§ 21 *et seq.* (the "<u>AEA</u>"), to authorize and direct the immediate

9 removal of Venezuelan nationals presently in the United States.  *See* 90 Fed.

10 Reg. 13033.  Specifically, President Trump found and declared that Tren de

11 Aragua, which is a "designated Foreign Terrorist Organization with thousands

12 of members," was "conducting irregular warfare and undertaking hostile actions

13 against the United States." *Id.*  President Trump further found that Tren de

14 Aragua, in connection with Venezuelan authorities, was "perpetrating an

15 invasion of and predatory incursion into the United States" and that such an

16 invasion "poses a substantial danger to the United States." *Id.*  Based upon

17 those findings, President Trump authorized and directed the immediate

18 apprehension and removal of "all Venezuelan citizens 14 years of age or older

19 who are members of [Tren de Aragua], are within the United States, and are not

20 actually naturalized or lawful permanent residents of the United States." *Id.*

21 Shortly after Proclamation No. 10903 became effective, five detainees and

22 a nationwide class sought to enjoin its enforcement.  *See Trump v. J.G.G.*, 145

23 S. Ct. 1003, 1005 (2025) (*per curiam*).  On March 15, 2025, the U.S. District

24 Court for the District of Columbia issued two temporary restraining orders

25 preventing the removal of the named plaintiffs and preventing the removal

26 under the AEA of any noncitizen in United States custody who was subject to

27 the Proclamation.  *See id.*  The Government appealed those temporary

28 restraining orders, and the Supreme Court vacated the orders based upon

1   improper venue.  *See id.*  The Supreme Court also held, however, that

2   "detainees subject to removal orders under the AEA are entitled to notice and

3   an opportunity to challenge their removal," so long as those detainees pursue

4   their challenges "in the district of confinement."  *Id.*

5       After the Supreme Court issued its *per curiam* opinion in *J.G.G.*, another

6   class of pretrial detainees applied for temporary restraining orders in the U.S.

7   District Court for the Northern District of Texas.  *See A.A.R.P. v. Trump*, 2025

8   WL 1417281, at *1 (S. Ct. May 16, 2025) (*per curiam*).  The district court denied

9   their application because the Government confirmed that it had "no present

10  plans to remove [the petitioners] until the habeas petition [was] resolved" and

11  that it "would notify the court if that change[d]."  *A.A.R.P. v. Trump*, 2025 WL

12  1148140, at *3 (N.D. Tex. Apr. 17, 2025).  The district court also declined to

13  certify the putative class.  *See id.* at *5.

14      Hours later, the Government caused the detainees to be served with

15  notices of AEA removal and informed them that they would be deported

16  "tonight or tomorrow."  *A.A.R.P.*, 2025 WL 1417281, at *3.  The detainees

17  responded by moving for an emergency temporary restraining order, and, when

18  the district court did not immediately issue it, they appealed to the Fifth Circuit

19  and the Supreme Court.  *See id.*  The Fifth Circuit declined to issue an

20  injunction, *see A.A.R.P. v. Trump*, 2025 WL 1148141, at *1 (5th Cir. Apr. 18,

21  2025), but the Supreme Court ordered the Government "not to remove any

22  member of the putative class of detainees" and held that the Government must

23  provide more than 24 hours' notice before removal.  *Id.* at *2–*3.  The Supreme

24  Court also vacated the district court's denial of class certification and

25  temporarily enjoined the Government "from removing putative class members

26  while the question of what notice is due is adjudicated."  *Id.* at *3.

27

28

-5-

1  **B.    The Facts as Alleged by Arevalo**

2      Arevalo is a Venezuelan citizen and a vocal dissident of the Venezuelan

3  government.[6]  Arevalo applied for asylum in the United States, and he was

4  previously granted a permit authorizing him to work and reside in the United

5  States pending the review of his asylum application.[7]  During a scheduled ICE

6  check-in, however, Arevalo was arrested and placed in detention at the Desert

7  View Annex or Desert View Modified Community Correctional Facility, which

8  is a part of, or an associate of, the Adelanto ICE Processing Center.[8]  The

9  Government did not provide Arevalo with prior notice of his arrest nor serve

10  him with a warrant or other documentation regarding the basis for his arrest.[9]

11  But Arevalo was informed, presumably by someone associated with the

12  Government, that his arrest was premised upon his status as a Venezuelan with

13  tattoos, which, although allegedly basketball-related, could indicate that Arevalo

14  is affiliated with Tren de Aragua.[10]

15      Arevalo commenced this action by filing his Petition in this Court on

16  Saturday, May 17, 2025, on behalf of himself and a putative class of Venezuelan

17  citizens subject to Proclamation No. 10903.[11]  Through his Petition, Arevalo

18  asserts 20 claims for relief under the United States Constitution, the California

19  Constitution, and various related statutes.[12]

20

21

22  _____

   [6]    Petition ¶ 2.

23  [7]    *Id.* at ¶ 3.

24  [8]    *Id.* at ¶ 4.

25  [9]    *Id.* at ¶ 6.

26  [10]    *Id.*

27  [11]    *See generally id.*

28  [12]    *See generally id.*

On the same day that Arevalo filed his Petition, he also filed the instant
TRO Application and Class Certification Application.[13]  Through his TRO
Application, Arevalo seeks the following elements of relief:

- to prevent the Government from removing Arevalo, or any member of the putative class, from the United States under Proclamation No. 10903;

- to prevent the Government from transferring Arevalo, or any member of the putative class, out of this judicial district;

- to require the Government to provide at least 30 days' notice prior to any removal or transfer out of this judicial district pursuant to Proclamation No. 10903;

- to provide Arevalo's counsel with notice of the transfer into this judicial district of any person designated as an Alien Enemy under the Proclamation; and

- to require the Government reasonably to preserve all property and evidence that it possesses regarding Arevalo and any other member of the putative class and to provide that evidence to Arevalo's counsel upon request.[14]

### III.  LEGAL STANDARD

**A.  *Ex Parte* Application**

"The opportunities for legitimate *ex parte* applications are extremely
limited."  *Lum v. Mercedes-Benz USA, LLC*, 2012 WL 13012454, at *1 (C.D. Cal.
Jan. 5, 2012).  To justify *ex parte* relief, the moving party must make two
showings:  (1) "the evidence must show that the moving party's cause will be
irreparably prejudiced if the underlying motion is heard according to regular
noticed motion procedures"; and (2) "it must be established that the moving

---

[13]    *See* TRO Application; Class Certification Application.

[14]    *See* TRO Application.

-7-

1  party is without fault in creating the crisis that requires *ex parte* relief, or that the

2  crisis occurred as a result of excusable neglect." *Mission Power Engineering Co. v.*

3  *Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

4  **B.    Rule 65—Temporary Restraining Order**

5         A party seeking a TRO or a preliminary injunction must establish four

6  elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will

7  likely suffer irreparable harm in the absence of preliminary relief, (3) that the

8  balance of equities tip in its favor, and (4) that the public interest favors an

9  injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069,

10 1071 (9th Cir.), *as amended* (Mar. 11, 2014) (citing *Winter v. Natural Res. Def.*

11 *Council, Inc.*, 555 U.S. 7, 22 (2008)).  When the nonmoving party is a

12 governmental entity, the last two *Winter* factors "merge." *Nken v. Holder*, 556

13 U.S. 418, 435 (2009).

14        If a plaintiff seeking to enjoin an alleged constitutional injury "shows he is

15 likely to prevail on the merits," then "that showing will almost always

16 demonstrate he is suffering irreparable harm as well." *Baird v. Bonta*, 81 F.4th

17 1036, 1042 (9th Cir. 2023).  "Accordingly, when an alleged deprivation of a

18 constitutional right is involved, . . . most courts hold that no further showing of

19 irreparable injury is necessary." *Id.* (quotation and brackets omitted).  Similarly,

20 "[a] plaintiff's likelihood of success on the merits of a constitutional claim also

21 tips the merged third and fourth factors decisively in his favor" because "it is

22 always in the public interest to prevent the violation of a party's constitutional

23 rights." *Id.* (quotations omitted).  Thus, a plaintiff who has established that he

24 is likely to succeed on the merits "ha[s] also established that both the public

25 interest and the balance of the equities favor a preliminary injunction." *Id.*

26        In the Ninth Circuit, "serious questions going to the merits and a balance

27 of hardships that tips sharply towards the plaintiff can support issuance of a

28 preliminary injunction, so long as the plaintiff also shows that there is a

1  likelihood of irreparable injury and that the injunction is in the public interest."

2  *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011) (internal

3  quotations omitted).

4  **C.    Rule 23—Class Certification**

5       The class action procedural vehicle is "an exception to the usual rule that

6  litigation is conducted by and on behalf of the individual named parties only."

7  *Wal–Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 348 (2011) (internal quotations

8  omitted).  To certify a class, "plaintiffs must prove the facts necessary to carry

9  the burden of establishing that the prerequisites of Rule 23 [of the Federal Rules

10  of Civil Procedure] are satisfied by a preponderance of the evidence."  *Olean*

11  *Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 665 (9th

12  Cir. 2022) (*en banc*).

13       Rule 23 governs class actions.  A party seeking class certification must

14  establish all of the following:

15       (1) the class is so numerous that joinder of all members is
16       impracticable; (2) there are questions of law or fact common to the
17       class; (3) the claims or defenses of the representative parties are
18       typical of the claims or defenses of the class; and (4) the
19       representative parties will fairly and adequately protect the interests
20       of the class.

21  Fed. R. Civ. P. 23(a).  After satisfying those four prerequisites—typically

22  referred to as "numerosity," "commonality," "typicality," and "adequacy"—

23  a party must also demonstrate one of the following:  (1) a risk that separate

24  actions would create incompatible standards of conduct for the defendant or

25  prejudice individual class members not parties to the action; (2) the defendant

26  has treated the members of the class as a class, making appropriate injunctive or

27  declaratory relief with respect to the class as a whole; or (3) common questions

28  of law or fact predominate over questions affecting individual members and a

1    class action is a superior method for fairly and efficiently adjudicating the action.

2    *See* Fed. R. Civ. P. 23(b)(1)-(3).

3         A district court has broad discretion to grant or deny a motion for class

4    certification.  *See Bateman v. Am. Multi-Cinema, Inc.*, 623 F.3d 708, 712 (9th Cir.

5    2010).  However, "[a] party seeking class certification must affirmatively

6    demonstrate compliance with [Rule 23]—that is, he must be prepared to prove

7    that there are in fact sufficiently numerous parties, common questions of law or

8    fact, etc."  *Wal-Mart Stores*, 564 U.S. at 350.  A district court must conduct a

9    "rigorous analysis" that frequently "will entail some overlap with the merits of

10   the plaintiff's underlying claim."  *Id.* at 351.

11        Class certification "'is inherently tentative,'" so "the judge remains free

12   to modify it in the light of subsequent developments in the litigation."  *Gen. Tel.*

13   *Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) (quoting *Coopers & Lybrand v.*

14   *Livesay*, 437 U.S. 463, 469 n.11 (1978)).  Additionally, the district court may,

15   within its discretion, amend the class definition, even *sua sponte.  See, e.g.*, *Davis*

16   *v. Lab'y Corp. of Am. Holdings*, 604 F. Supp. 3d 913, 934 n.16 (C.D. Cal. 2022),

17   *aff'd*, 2024 WL 489288 (9th Cir. Feb. 8, 2024) (certifying a class with a

18   definition different than what was proposed in the motion), *cert. granted*, 145

19   S. Ct. 1133 (2025); *see also Davis*, 2024 WL 489288, at *1 (noting that, after

20   awarding class certification, "the district court amended  its class certification

21   order to refine the class definitions").  "This flexibility enhances the usefulness

22   of the class-action device."  *Falcon*, 457 U.S. at 160.

23   **IV.  ANALYSIS**

24   **A.    TRO Application**

25        Arevalo has satisfied all four elements necessary to obtain a TRO.  First,

26   Arevalo is likely to succeed on the merits of his claims, insofar as those claims

27   relate to the Government's ability to remove detainees without notice that is

28   sufficient to allow detainees to seek habeas relief prior to removal.  *See J.G.G.*,

-10-

145 S. Ct. at 1006.  Second, in view of the Government's representations in other cases regarding its ability to recover individuals who have been deported, Arevalo will likely suffer irreparable harm in the absence of immediate, temporary relief.  *See A.A.R.P.*, 2025 WL 1417281, at *2.  Finally, in view of the potential that constitutional deprivations may occur in the absence of immediate injunctive relief, the balance of the equities and public interest favor temporary injunctive relief.  *See*, *e.g.*, *Baird*, 81 F.4th at 1042.

Accordingly, Arevalo's instant TRO Application is **GRANTED in part**. The Government may not remove or transfer Arevalo out of this judicial district pursuant to Proclamation No. 10903 without providing prior notice, including and until further order of this Court regarding the amount of notice that is due. *See A.A.R.P.*, 2025 WL 1417281, at *3; *see also id.* at *4 (Kavanaugh, J., concurring) (clarifying that injunctive relief is appropriate to "ensure[] that the Judiciary can decide *whether* these Venezuelan detainees may be lawfully removed under the Alien Enemies Act *before* they are in fact removed") (emphasis in original).

**B.    Class Certification Application**

Arevalo also seeks to certify, on an immediate basis, a class consisting of the following:

> All noncitizens in custody in the Central District of California who were, are, or will be subject to the March 2025 Presidential Proclamation entitled "Invocation of the Alien Enemies Act Regarding the Invasion of the United States by Tren de Aragua" and/or its implementation.[15]

The Court views the Class Certification Application as controlled by the Supreme Court's decision in *A.A.R.P.*, 2025 WL 1417281.  There, the Supreme

---

[15]    Class Certification Application 1:26–28.

1   Court reversed the denial of a similar putative class and enjoined the

2   Government from removing members of the putative class while the question of

3   what notice was due was adjudicated.  *See id.* at *3.  In doing so, the Supreme

4   Court appeared to conclude that, although it may be inappropriate to certify a

5   class of detainees insofar as the class sought to challenge their removability on a

6   classwide basis, it ***was*** appropriate to certify, on an emergency basis, a class that

7   sought "to vindicate notice rights on a classwide basis."  *Id.* at *3 n.1; *see also id.*

8   at *3 ("Although the putative class members may ultimately take different steps

9   to protect their own interests in response to such a notice, the notice to which

10  they are entitled is the same.").

11         Accordingly, Arevalo's Class Certification Application is **GRANTED in**

12  **part**.  Pursuant to *A.A.R.P.*, the Court certifies the above-identified class for the

13  limited purpose of adjudicating the amount of notice due prior to removal under

14  the AEA or Proclamation No. 10903.

### V.  DISPOSITION

16         For the foregoing reasons, the Court hereby **ORDERS** as follows:

17         1.      Arevalo's instant Applications [ECF Nos. 2 & 3] are **GRANTED**

18  **in part**.

19         2.      The following class is **CERTIFIED**, for the limited purpose of

20  granting temporary injunctive relief:

21               All noncitizens in custody in the Central District of California who

22               were, are, or will be subject to the March 2025 Presidential

23               Proclamation entitled "Invocation of the Alien Enemies Act

24               Regarding the Invasion of the United States by Tren de Aragua"

25               and/or its implementation.

26         3.      The Government is hereby temporarily **ENJOINED** and

27  **RESTRAINED** from removing Arevalo, or any member of the putative class,

28  under the AEA or Proclamation No. 10903 pending further Order of this Court.

4.      Arevalo is **DIRECTED** forthwith to serve the Petition, the Applications, and this Order on the Government defendants, and each of them.

5.      Arevalo is **DIRECTED** to file proof of such service no later than 5:00 p.m. on Wednesday, May 21, 2025.

6.      The Government is **DIRECTED** to file oppositions to Arevalo's instant Applications no later than 12:00 noon on Tuesday, May 27, 2025.

7.      Arevalo is **DIRECTED** to file his replies in support of his Applications, if any, no later than 12:00 noon on Thursday, May 29, 2025.

8.      A hearing on the instant Applications is **SET** for Friday, May 30, 2025, at 8:00 a.m. in Courtroom 9D of the Ronald Reagan Federal Building and U.S. Courthouse, 411 W. 4th Street, Santa Ana, California.  Counsel for the parties are **DIRECTED** to appear in person at that date and time.

9.      This Temporary Restraining Order is issued at 6:35 p.m. on Monday, May 19, 2025.  It shall remain in effect until the conclusion of the hearing on May 30, 2025.

**IT IS SO ORDERED.**

Dated:  May 19, 2025



John W. Holcomb
UNITED STATES DISTRICT JUDGE