# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DARWIN ANTONIO AREVALO MILLAN, on his own and on behalf of others similarly situated,<br><br>    Petitioner-Plaintiff,<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; PAMELA BONDI, Attorney General of the United States, in her official capacity; KRISTI NOEM, Secretary of the U.S. Department of Homeland Security, in her official capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; PETE HEGSETH, Secretary of the U.S. Department of Defense, in his official capacity; U.S. DEPARTMENT OF DEFENSE; MARCO RUBIO, Secretary of State, in his official capacity; U.S. DEPARTMENT OF STATE; TODD LYONS, Acting Director of U.S. Immigration and Customs Enforcement, in his official capacity; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; DAVID MARIN, in his official capacity as Director of the Los Angeles Field Office Director for U.S. Immigration and Customs Enforcement; | Case No. 5:25-cv-01207-JWH-PDx<br><br>**ORDER DENYING PETITIONER-PLAINTIFF'S *EX PARTE* APPLICATION FOR ISSUANCE OF THE WRIT OF HABEAS CORPUS [ECF No. 30]** |

1 | FERETI SEMAIA, in his official capacity as Warden of the GEO Group Adelanto ICE Processing Center and Desert View Annex; and DOES 1-10,

        Respondents-Defendants.

Before the Court is the *ex parte* application of Petitioner-Plaintiff Darwin Antonio Arevalo Millan ("Arevalo") for a writ of habeas corpus and writ of mandamus.[1] The Court concludes that this matter is appropriate for resolution without a hearing. *See* Fed. R. Civ. P. 78; L.R. 7-15. For the reasons explained below, Arevalo's instant Application is **DENIED**.

## I. BACKGROUND

The parties are familiar with the history of this case. As relevant here, Arevalo is a Venezuelan citizen currently detained at the Desert View Annex or Desert View Modified Community Correctional Facility, which is associated with the Adelanto Immigration and Customs Enforcement ("ICE") Processing Center.[2] Arevalo applied for asylum in the United States, and he was previously granted parole, which allowed him to work and reside in the United States pending the resolution of removal proceedings and his asylum application.[3] During a scheduled ICE check-in, however, Arevalo was arrested and placed in detention.[4] The Government did not provide Arevalo with prior notice of his arrest nor serve him with a warrant or other documentation regarding the basis for his arrest.[5]

Arevalo suspected that he may have been detained pursuant to Proclamation No. 10903 (the "Proclamation"), which authorized the immediate detention and removal of certain Venezuelan citizens.[6] Thus, on Saturday,

---

[1] *See* Pet.-Pl.'s Emergency *Ex Parte* Appl. for a Writ of Habeas Corpus (the "Application") [ECF No. 30].

[2] Petition for Writ of Habeas Corpus and Class Action Compl. for Decl. and Inj. Relief (the "Petition") [ECF No. 1] ¶ 2.

[3] *Id.* at ¶ 3.

[4] *Id.* at ¶ 5.

[5] *Id.* at ¶ 6.

[6] *See generally id.*

May 17, 2025, Arevalo filed a petition on behalf of himself and a putative class of Venezuelan citizens,[7] though which Arevalo sought injunctive relief preventing the Government from removing Arevalo or other Venezuelan nationals pursuant to the Alien Enemies Act, 50 U.S.C. §§ 21 *et seq.*, without prior adequate notice and process.[8] On the same day that Arevalo filed his Petition, he also filed *ex parte* applications for a temporary restraining order and for class certification.[9]

The Court granted both of those Applications in part on Monday, May 19, 2025, by issuing a temporary restraining order.[10] In the TRO, the Court also directed the Government to respond to the Applications and set a hearing on Arevalo's request for a preliminary injunction for Friday, May 30, 2025.[11] In its Opposition and during the hearing, the Government argued that Arevalo was not entitled to injunctive relief because he was being detained pursuant to the Immigration and Nationality Act (the "INA"), not the Proclamation, and because Arevalo was scheduled to appear at an asylum and removal hearing a few days later—on June 9, 2025.[12]

On June 2, 2025, the Court certified the proposed class of Venezuelan nationals and enjoined the Government, on a preliminary basis, from removing Arevalo or any member of the putative class pursuant to the Proclamation and from transferring Arevalo or any member of the putative class out of this judicial

---

[7] *See id.*

[8] *See generally id.*

[9] *See* Pet.-Pl.'s Emergency Appl. for a Temporary Restraining Order (the "TRO Application") [ECF No. 2]; Pet.-Pl.'s Mot. for Class Certification (the "Class Certification Application") [ECF No. 3].

[10] *See* Order re the TRO Application (the "TRO") [ECF No. 6].

[11] *See id.*

[12] *See generally* Resps.-Defs.' Opp'n to the Class Certification Application [ECF No. 11].

district.[13]  In its Preliminary Injunction Order, the Court also expressed its concern that Arevalo may not be detained solely pursuant to the INA, in part because the Government represented to the Court that immigration detainees are generally released from ICE custody if they are granted asylum, but the Government was unsure whether Arevalo would be released from ICE custody if he received asylum at the then-upcoming June 9, 2025, hearing.[14]

It appears that Arevalo was granted asylum during his June 9, 2025, hearing.[15]  Five days later, Arevalo filed the instant Application, in which he informed the Court that he remains in ICE custody.[16]  Arevalo seeks an order requiring the Government to release him immediately, based upon Arevalo's status as an asylee.[17]

## II.  LEGAL STANDARD

"The opportunities for legitimate *ex parte* applications are extremely limited."  *Lum v. Mercedes-Benz USA, LLC*, 2012 WL 13012454, at *1 (C.D. Cal. Jan. 5, 2012).  To justify *ex parte* relief, the moving party must make two showings:  (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires *ex parte* relief, or that the crisis occurred as a result of excusable neglect."  *Mission Power Engineering Co. v. Continental Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

---

[13]    *See* Am. Order re the TRO Application and the Class Certification Application Pet.-Pl.'s *Ex Parte* Appl. for a Temporary Restraining Order (the "Preliminary Injunction Order") [ECF No. 29].

[14]    *See id.* at 10.

[15]    *See* Application, Ex. A (the "Immigration Order") [ECF No. 30-4].

[16]    *See* Application.

[17]    *See id.*

### III.  ANALYSIS

Arevalo argues that he is entitled to *ex parte* relief because, in view of the Immigration Order, the Government no longer has any legal basis to support Arevalo's detention.[18]  In response, the Government asserts that it intends to appeal the Immigration Order in Arevalo's case and that Arevalo is detained pursuant to 8 U.S.C. § 1225(b)(2)(A) pending the resolution of that appeal.

Under that statute, "an alien who is an applicant for admission," and for whom the Attorney General has commenced removal proceedings under 8 U.S.C. § 1229a, must remain detained "until removal proceedings have concluded."  *Jennings v. Rodriguez*, 583 U.S. 281, 299 (2018).  And, because "[t]he Immigration Judge's grant of relief in removal proceedings is not final [if] it has been appealed," a removal proceeding has not concluded until such appeal has been decided.  *Matter of E-Y-F-G-*, 29 I.&N. Dec. 103, 105 (BIA 2025).  Thus, an applicant may remain in custody pending any such appeal.  *See Matter of M-S-*, 27 I.&N. Dec. 509, 517 (BIA 2019).

Arevalo does not appear to dispute that 8 U.S.C. § 1225(b)(2)(A) authorizes the Government to detain an asylee pending the resolution of removal proceedings, and Arevalo does not contest the Government's ability to appeal the Immigration Order.[19]  Nevertheless, Arevalo maintains that the Government's authority to detain him ceased when the Immigration Order was entered for several reasons.  First, Arevalo asserts that the Immigration Judge "decided that he is 'clearly and beyond a doubt entitled to be admitted' by granting asylum" and that such decision is conclusive.[20]  But the Immigration

---

[18]    *See generally id.*

[19]    *See* Application; Pl.'s Reply in Support of the Application (the "Reply") [ECF No. 39].

[20]    Reply 9:2-4 (quoting 8 U.S.C. § 1225(b)(2)(A)).

Order contains no such finding, and Arevalo provides no authority to support the proposition that an appealable decision is somehow also a conclusive decision for the purpose of 8 U.S.C. § 1225(b)(2)(A).[21] Similarly, although Arevalo urges the Court to disregard the BIA's precedents regarding the non-finality of asylum decisions, Arevalo provides no alternative authorities on which this Court could rely.[22]

Next, Arevalo argues that the Supreme Court's decision in *Jennings* has been limited by other Supreme Court cases, including *Biden v. Texas*, 597 U.S. 785 (2022), and *Johnson v. Arteaga-Martinez*, 596 U.S. 573 (2022). But it is unclear why Arevalo believes that either of those cases limits the Government's authority under 8 U.S.C. § 1225. In *Biden*, the Supreme Court addressed whether the Government was permitted, under a different provision of the INA, to terminate a program through which certain noncitizens were returned to Mexico. *See Biden*, 597 U.S. at 790-91. And in *Johnson*, the Supreme Court held that the Government is not required "to offer detained noncitizens bond hearings after six months of detention." *Johnson*, 596 U.S. at 576. Neither decision limited or undermined *Jennings* or the Government's authority under 8 U.S.C. § 1225(b)(2)(A).

Finally, Arevalo contends that the Supreme Court's decision in *Boumediene v. Bush*, 523 U.S. 723 (2008), controls this case.[23] But that position appears to arise out of Arevalo's belief that the Government seeks a "functional suspension of the writ" of habeas corpus because the Government's application of 8 U.S.C. § 1225(b)(2)(A) "would allow indefinite detention of immigrants

---

[21] *See* Immigration Order.
[22] *See* Reply 9:12-20.
[23] *See id.* at 7:10.

even if they are legally and duly residing in the United States."[24] Arevalo's belief is unfounded. As the Supreme Court has acknowledged, 8 U.S.C. § 1225(b)(2)(A) "provide[s] for detention for a specified period of time"; *i.e.*, "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. Because the Government intends to appeal the decision in Arevalo's removal proceedings, those proceedings are not yet final, and, consequently, Arevalo's detention remains permissible under the INA. *See id.*

Accordingly, Arevalo's instant Application is **DENIED**.[25]

## IV. DISPOSITION

For the foregoing reasons, the Court hereby **ORDERS** as follows:

1. Arevalo's instant Application [ECF No. 30] is **DENIED without prejudice**.

2. The Government is **DIRECTED** to file a Status Report no later than July 10, 2025, and every 30 days thereafter, that advises the Court regarding the status of the Government's appeal in Arevalo's removal and asylum proceedings.

**IT IS SO ORDERED.**

Dated: June 20, 2025



John W. Holcomb
UNITED STATES DISTRICT JUDGE

---

[24] *Id.* at 15:3-8.

[25] Because the Court concludes that Arevalo has not established the need for *ex parte* relief on an individual basis, the Court declines to address Arevalo's request that such relief also be provided on a class-wide basis.

-8-